**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

BILLY MICHAEL DORTCH,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-CV-03490-ICD

MEMORANDUM OPINION AND ORDER

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 6, 8, 9). For the reasons discussed below, Plaintiff's motion for summary judgment is denied, the Commissioner's cross-motion for summary judgment is granted, and the Commissioner's final decision is affirmed.

The Court reviews the Commissioner's final decision to determine whether it is based on proper legal standards and supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The record, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or

if conflicting evidence supports a particular finding, the Commissioner's finding is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g). The sequential evaluation proceeds as follows:

- Step 1: Determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled, and the claim is denied.
- Step 2: If the claimant is not engaged in substantial gainful activity, determine whether the claimant has a severe impairment; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 3: If the claimant has one or more severe impairments, determine whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted.
- Step 4: If the claimant's impairment is not listed in the regulations, determine whether the impairment prevents the claimant from performing past work considering the claimant's residual functional capacity; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 5: If the impairment prevents the claimant from performing past work, determine whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled, and the claim is denied.

See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g).

To qualify for benefits, the claimant must establish an inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant bears the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case by showing that physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d at 1340; Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 879 F.2d at 501.

## II. THE COMMISSIONER'S FINDINGS

Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act on October 25, 2022. See CAR 28.[1] In the application, Plaintiff claims disability began on December 1, 2021. See id. Plaintiff's claim was denied initially on May 25, 2023, and upon reconsideration on May 14, 2024. See id. Plaintiff requested an administrative hearing, which was held on December 10, 2024, before an Administrative Law Judge (ALJ). See CAR 28, 45-61. In a December 23, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025;

[1] Citations are to the Certified Administrative Record (CAR) lodged on February 2, 2026, ECF No. 5.

2. The claimant has the following severe impairments: lumbar spine degenerative disc disease and cervical spine degenerative disc disease with spondylosis;

3. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

4. The claimant has the following residual functional capacity: the claimant can perform medium work as defined in 20 CFR 404.1567(c), except he can sit for six hours and stand/walk for six hours in an eight-hour workday; he can occasionally perform postural activities but can never climb ladders, ropes, or scaffolds; and he must avoid concentrated exposure to extreme cold and all exposure to dangerous hazards such as working at unprotected heights or operating heavy machinery;

5. The claimant is unable to perform his past relevant work as a truck driver;

6. The claimant was 59 years old, an individual of advanced age, on the alleged onset date, subsequently changed age category to closely approaching retirement age, and has at least a high school education; and

7. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including linen room attendant, change house attendant, and dining room attendant.

See CAR 30-39.

After the Appeals Council declined review on November 13, 2025, this appeal followed. CAR 1-3.

**III. DISCUSSION**

In his opening brief, Plaintiff argues: (1) the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction; (2) the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Garry Guce, M.D.; (3) the ALJ failed to evaluate the opinions of Plaintiff's physical therapists; and (4) new evidence submitted to the Appeals Council after the ALJ's decision warrants remand. See ECF No. 6, p. 8. For the reasons discussed below, the Court finds no reversible error.

Plaintiff's exertional capacity is central to each of these issues. At the hearing, the ALJ asked the vocational expert whether a hypothetical individual of Plaintiff's age, education, and work experience, limited to light work with lifting restricted to 15 pounds and standing and walking restricted to four hours in an eight-hour workday, would have any skills that transferred from Plaintiff's past work as a truck driver. The vocational expert testified that the individual would not. See CAR 60. Plaintiff notes that, given his age, he could be found disabled under the Medical-Vocational Guidelines if he were limited to light work. See ECF No. 6, pp. 11-12 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.06). The question before the Court, however, is not whether the evidence could support a more restrictive residual functional capacity, but whether the ALJ applied the correct legal standards and whether substantial evidence supports the residual functional capacity the ALJ assessed. See Thomas, 278 F.3d at 954.

**A. Evaluation of Plaintiff's Subjective Symptom Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee, 94 F.3d at 522. An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See

Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas, 278 F.3d at 958-59. If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Ultimately, the clear and convincing standard "requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Id.

At the administrative hearing, Plaintiff testified that he retired from his job as a UPS truck driver at the end of April 2020 because UPS told its drivers that they would have to start working more hours and, as he put it, "there is no way I can. I'm barely doing what I can now." CAR 51. He described constant burning, throbbing, and aching pain in his neck and lower back that he rated as a seven out of ten without medication and a five out of ten with it. See CAR 51-52. In his words, the pain is "constant but I can control it with the meds." CAR 51. Plaintiff testified that he can lift about ten pounds, can stand in one place for about 15 minutes, and can walk for about ten minutes before needing to rest for five to ten minutes. See CAR 53-54, 56. He testified that he cannot reach overhead, avoids stairs "at all costs," has difficulty bending, and spends his day alternating between sitting, standing, and walking around the house. See CAR 52, 54, 56-57. According to Plaintiff, his wife does most of the driving because it is hard for him to turn his head to check traffic, his son does his yard work, and his household chores are limited to light dusting and folding clothes. See CAR 53-55. In function reports, Plaintiff and his wife similarly reported

that Plaintiff's conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. See CAR 32 (citing CAR 221-31, 249-60, 275-82).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms "are not entirely consistent with the medical evidence and other evidence in the record." CAR 32. The ALJ organized the reasons for that finding under four headings: (1) the objective imaging studies; (2) the findings on physical examination; (3) Plaintiff's treatment history; and (4) "[f]actors aside from the medical evidence," including Plaintiff's activities and the timing of his retirement. See CAR 32-36.

As to the objective evidence, the ALJ acknowledged that imaging documented significant degenerative disease, including "marked" and "moderate to severe" disc space narrowing on lumbar x-rays, and that examinations showed reduced cervical and lumbar range of motion, paracervical muscle spasm, a stiff posture, tenderness, reduced or absent reflexes, difficulty with single-leg stance, and, on one occasion, an antalgic gait. See CAR 32-34. The ALJ found, however, that the imaging showed normal alignment, no more than moderate stenosis on the November 2022 MRIs, and no significant change on repeat MRIs in October 2024. The ALJ also found that examinations by the two consultative examiners, Shahid Ali, M.D., and Dale H. Van Kirk, M.D., and by Plaintiff's spine specialist, Jean Lai, M.D., showed full strength, intact sensation, and negative straight-leg raising, and that at Dr. Ali's examination Plaintiff walked without assistance, sat comfortably, and got on and off the examination table without difficulty. See id. (citing CAR 482-86, 511-13, 523-28, 568-72).

As to treatment, the ALJ noted that Plaintiff's treatment included medication, with hydrocodone-acetaminophen (Norco) as needed beginning in August 2023, as well as multiple rounds of physical therapy, acupuncture, and a pain management program. See CAR 34-35. The ALJ found that this treatment was "routine and conservative in nature, and sufficiently effective that the claimant was able to travel." CAR 34. The ALJ cited Dr. Guce's July 2024 note that Plaintiff's pain was "currently managed with pain medication" and that Plaintiff was planning a 14-day cruise to Panama, as well as Plaintiff's 2023 trip to Palm Springs to help care for his son's

pets and short-term rental properties while his son traveled to Europe. See CAR 34-35 (citing CAR 511, 666). The ALJ also noted that Dr. Lai did not recommend spinal injections and advised that it was unclear whether surgery would be recommended. See CAR 35 (citing CAR 528). Finally, the ALJ found that "some of the nonmedical evidence is not entirely consistent with the claimant's allegation of physical disability." CAR 35. The ALJ cited Plaintiff's reported activities, such as driving, shopping, playing board games, walking to the mailbox, and light housecleaning and gardening. See CAR 35-36. The ALJ also noted that, although Plaintiff said that he had to stop working because of his condition, he retired in April 2020, "one year and seven months before the alleged onset date of December 1, 2021." CAR 36 (citing CAR 273).

Plaintiff argues that the ALJ merely summarized the medical evidence, which contained both normal and abnormal findings, without identifying a specific conflict between that evidence and his testimony. See ECF No. 6, pp. 10-11 (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102-03 (9th Cir. 2014); Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020); Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014)). He contends that findings of "no acute distress" and intact extremity strength and sensation say little about chronic, localized neck and back pain, and that the ALJ improperly suggested that particular objective findings are required to establish a disabling impairment. See id. at 11-12. He argues that his treatment, which included physical therapy, acupuncture, a pain management program, and narcotic pain medication, was not conservative, and that more aggressive options such as injections and surgery were not recommended. See id. at 12-13 (citing Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017); Lapierre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010)). He contends that his strong work history supports, rather than undermines, his allegations, and that the ALJ failed to develop the record as to what his cruise and his stay in Palm Springs actually involved. See id. at 13-14 (citing Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). In reply, Plaintiff adds that the ALJ selectively reviewed the objective evidence, that a lack of objective support cannot alone justify discounting his testimony, and that because a limitation to light work would be disabling for a claimant of his age, he need not show

pain so severe that it required surgery. See ECF No. 9, pp. 2-4 (citing Ferguson v. O'Malley, 95 F.4th 1194, 1200 (9th Cir. 2024); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005)).

The Commissioner responds that the ALJ identified mild and normal findings that were inconsistent with Plaintiff's claimed limitations, that Plaintiff's treatment was routine and effective, and that Plaintiff's travel, his activities, and the timing of his retirement relative to his alleged onset date were permissible considerations. See ECF No. 8, pp. 3-8 (citing, inter alia, Smartt, 53 F.4th at 498-500). The Commissioner also argues that Plaintiff waived any challenge to the ALJ's reliance on his daily activities. See id. at 7.

The Court agrees with the Commissioner that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

First, the ALJ did not merely summarize the medical evidence. It is true that "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." Lambert, 980 F.3d at 1278 (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015)). But an ALJ need not "perform a line-by-line exegesis of the claimant's testimony," id. at 1277, so long as the ALJ's rationale is clear enough that it has "the power to convince," Smartt, 53 F.4th at 499. Here, the ALJ set out Plaintiff's testimony about his limitations in lifting, sitting, standing, and walking, see CAR 32, and then identified specific findings that bear directly on those abilities. Full strength in all four extremities, including grip strength, see CAR 486, 513, 525, 572, is relevant to Plaintiff's claim that he can lift no more than a ten-pound bag of sugar. The consultative examiners' observations that Plaintiff walked without assistance, sat comfortably, and got on and off the examination table without difficulty, together with repeatedly negative straight-leg raising tests, see CAR 485-86, 526, 570-72, are relevant to his claims that he can stand for only 15 minutes and walk for only ten. Where objective medical evidence is inconsistent with a claimant's testimony, the ALJ may weigh that evidence "as undercutting such testimony." Smartt, 53 F.4th at 498. The connection between these findings and the testimony the ALJ discounted is apparent from the decision, and the ALJ was not required to state it in more granular terms. See Lambert, 980 F.3d at 1277.

Plaintiff's contrary arguments are unpersuasive. Plaintiff contends that intact extremity strength is immaterial absent allegations of extremity weakness, see ECF No. 6, p. 11, but his alleged lifting limitation is precisely the kind of limitation that strength testing addresses. Plaintiff also contends that the ALJ selectively relied on normal findings, see ECF No. 9, pp. 2-3, but the ALJ expressly discussed the abnormal findings Plaintiff identifies, including his reduced range of motion, muscle spasm, stiff posture, reduced reflexes, and antalgic gait. See CAR 33-34. The ALJ weighed that evidence against the normal findings, and where "evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch, 400 F.3d at 679. The Court agrees with Plaintiff that the notations in Dr. Guce's primary care records that Plaintiff was in "no distress" and had "no joint tenderness, deformity or swelling," see CAR 33, 342, 506, say little about the severity of chronic spinal pain. But the ALJ's analysis did not depend on those notations, and the remaining findings the ALJ cited are sufficient. Nor does the Court read the ALJ's statements that the imaging and examination findings did not support "the presence of disabling physical impairment," CAR 32, as imposing a requirement that Plaintiff produce any particular objective finding. Read in context, the ALJ was explaining why the record as a whole did not corroborate the degree of limitation Plaintiff described.

Furthermore, the rule that an ALJ may not discount testimony solely because it is not corroborated by objective medical evidence, see Burch, 400 F.3d at 680; Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006), does not apply here because the ALJ did not rely on the objective evidence alone. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Second, the ALJ permissibly relied on evidence that Plaintiff's symptoms were effectively managed with treatment. Evidence that treatment has effectively controlled a claimant's symptoms is a proper basis for discounting allegations of disabling symptoms. See 20 C.F.R. § 404.1529(c)(3)(iv)-(v); Warre ex rel. E.T. IV v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006); Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008). The ALJ cited Dr. Guce's July 2024 note that Plaintiff's pain

was "currently managed with pain medication." CAR 34, 666. The same note records that Plaintiff described his pain as chronic but reported that he was "on [an] effective pain medication regimen," rated his pain at four out of ten, and reported that the medication improved his level of function with physical and social activities. CAR 667. Plaintiff's own testimony was to the same effect: his pain is "constant but I can control it with the meds." CAR 51. Plaintiff also told Dr. Ali that pain medication "helped him," CAR 484, and told his physical therapist in September 2023 that his back pain was getting better, CAR 498. The ALJ could reasonably conclude that this evidence undercuts Plaintiff's testimony that his pain prevents him from lifting more than ten pounds, standing for more than 15 minutes, or walking for more than ten.

The Court shares some of Plaintiff's doubts about the ALJ's characterization of his treatment as "routine and conservative." Plaintiff was prescribed an opioid analgesic on an ongoing basis under an opioid agreement, attended multiple rounds of physical therapy, received acupuncture, and participated in a pain management program. The more aggressive options, spinal injections and surgery, were either not recommended or of uncertain benefit. See CAR 34-35, 504, 528, 666. "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated," Revels, 874 F.3d at 667, and a claimant cannot be faulted for failing to pursue more aggressive treatment that is not available to him, see Lapierre-Gutt, 382 F. App'x at 664. The Court need not resolve whether the ALJ's characterization was proper, however. The ALJ's central point was that Plaintiff's treatment was "sufficiently effective." CAR 34. For the same reason, Plaintiff's argument in reply that he need not show pain severe enough to require surgery, see ECF No. 9, p. 4, does not undermine the ALJ's reasoning. Even assuming the ALJ erred in describing Plaintiff's treatment as conservative, the error is harmless because the ALJ's reliance on the effectiveness of that treatment remains valid and is supported by substantial evidence. See Carmickle, 533 F.3d at 1162.

Third, the ALJ permissibly considered Plaintiff's travel. The ALJ noted that Plaintiff traveled to Palm Springs to help care for his son's pets and short-term rental properties while his son was in Europe, and that he was planning a 14-day cruise to Panama. See CAR 34-35, 511, 666; see also CAR 505 (August 2023 note that Plaintiff needed a motion sickness patch because

he was "going for European Cruise with wife soon"). The Ninth Circuit has upheld an ALJ's inference, from a claimant's ability to travel for an extended time to care for a family member, that the claimant "was not as physically limited as he purported to be." Tommasetti, 533 F.3d at 1040. Plaintiff is correct that the record contains few details about what his travel or his caretaking in Palm Springs required, see ECF No. 6, pp. 13-14, and the Court recognizes that activities whose demands are unknown may say little about a claimant's capacity, see Trevizo v. Berryhill, 871 F.3d 664, 676, 682 (9th Cir. 2017). But the ALJ did not treat Plaintiff's travel as proof that he could perform particular work activities. Rather, the ALJ cited it as evidence that Plaintiff's treatment was "sufficiently effective that the claimant was able to travel." CAR 34. That is a rational inference from the record, and the Court may not substitute a different one. See Burch, 400 F.3d at 679.

The ALJ's remaining reasons require less discussion. The activities the ALJ described, such as driving, shopping, playing board games, walking to the mailbox, light housecleaning, and light gardening, see CAR 35, are modest, and the ALJ did not explain how they contradicted any particular aspect of Plaintiff's testimony or translated into an ability to perform medium work. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Court declines the Commissioner's invitation to find waiver. See ECF No. 8, p. 7. Plaintiff's position is that the ALJ did not rely on his activities in the first place, see ECF No. 6, p. 13, and he addresses them in reply, see ECF No. 9, p. 4. To the extent the ALJ relied on these activities, however, any error is harmless in light of the ALJ's other valid reasons. See Carmickle, 533 F.3d at 1162.

As to Plaintiff's retirement, the ALJ noted that Plaintiff attributed his April 2020 retirement to his impairments but alleged that he did not become disabled until December 2021. See CAR 36; see also CAR 66 (Plaintiff's February 2023 report to the agency that he "stopped working because of his arthritis" in May 2020), 273. An ALJ may consider the circumstances under which a claimant stopped working. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001); Tommasetti, 533 F.3d at 1040. The ALJ could reasonably regard the 19-month gap between the date Plaintiff said his impairments forced him to stop working and his alleged onset

date as bearing on the reliability of his account of his limitations. Plaintiff's lengthy work history cuts the other way, see ECF No. 6, p. 13, but weighing such competing considerations is the ALJ's task. In any event, even if this reason carried little weight on its own, the ALJ's other reasons are sufficient.

In summary, the ALJ identified the testimony he found not entirely consistent with the record and explained, with citations to specific evidence, why: the examination findings were inconsistent with the degree of limitation Plaintiff described, and the record showed that Plaintiff's pain was effectively managed with medication to the point that he could travel. Those reasons are clear and convincing and are supported by substantial evidence. Any error in the ALJ's remaining reasons is harmless. See Carmickle, 533 F.3d at 1162; Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

**B. Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison, 759 F.3d at 1012. The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal. May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

The Ninth Circuit has since confirmed that the revised regulations displace its former requirement that an ALJ provide "specific and legitimate reasons" for rejecting an examining doctor's opinion. See Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Even so, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Id.

At Step 4, the ALJ evaluated the prior administrative medical findings of state agency medical consultants H. Samplay, M.D., and J. Hay, D.O., both of whom assessed Plaintiff as capable of medium work with postural limitations, and found them generally persuasive. See CAR 36. The ALJ also evaluated the opinions of the two consultative examiners. Dr. Ali opined that Plaintiff could sit, stand, and walk without limitation and lift 50 pounds occasionally and 25 pounds frequently, with postural limitations. See CAR 483. The ALJ found that opinion partially persuasive. See CAR 36-37. Dr. Van Kirk opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours in an eight-hour workday, and sit without limitation, with occasional postural activities, frequent manipulative activities, and no work in an extremely cold or damp environment. See CAR 572. The ALJ found that opinion persuasive except as to the manipulative limitation. See CAR 37. Plaintiff does not challenge the ALJ's evaluation of any of these four sources. He challenges only the ALJ's evaluation of Dr. Guce's May 2024 work status report and the ALJ's failure to address statements in the records of his physical therapists.

1. Dr. Guce

On May 16, 2024, Plaintiff sent Dr. Guce, his primary care physician, a secure message: "I am looking to get a work status report showing my limitations of lifting. Should I come in for this or can you give me a letter? Anything over 15 pounds gives me pain in my shoulders and back, let me know if you wanna see me . . . ." CAR 635. Dr. Guce responded the same day: "No need for visit, I have enough information to make a work limitation." Id. The resulting work status report placed Plaintiff on modified activity "at work and at home" from May 16, 2024, through August 18, 2024. CAR 638. During that period, Plaintiff was to stand and walk for no more than 30 cumulative minutes per hour each, bend at the waist and twist his torso for no more than 20 cumulative minutes per hour each, reach above either shoulder only occasionally, and lift, carry, push, or pull no more than 15 pounds. See id. The report stated that Plaintiff was "deemed able to return to work at full capacity on 8/19/2024." Id. It did not identify any clinical findings or other explanation for the restrictions. See id.

The ALJ found the report not persuasive. See CAR 37. As to supportability, the ALJ found that Dr. Guce's own examinations "consistently found the claimant in no distress, and negative for joint tenderness, deformity, or swelling," and that, in light of Plaintiff's May 16, 2024, message requesting a report reflecting a 15-pound lifting limitation, "it appears Dr. Guce provided the claimant with the work status report as an accommodation." Id. (citing CAR 635). As to consistency, the ALJ found Dr. Guce's limitations inconsistent with the opinions of Drs. Samplay, Hay, Ali, and Van Kirk. See id. The ALJ also found that Dr. Guce's other work status reports, which placed Plaintiff off work for stated periods, were similarly unsupported and inconsistent. See id.

Plaintiff argues that the ALJ's supportability analysis was deficient because, although Dr. Guce's examinations "contained little or no exam findings," Dr. Guce oversaw Plaintiff's care, referred him to physical therapy and a spine specialist, and was aware of the imaging and of the reduced range of motion documented in physical therapy. See ECF No. 6, pp. 15-16. He argues that the ALJ's consistency analysis was deficient because Dr. Guce was the only physician who treated him and because the report is consistent with the assessments of his physical therapists. See id. at 16. And he argues that the ALJ could not discount the report based on the purpose for which it was obtained. See id. (citing Reddick, 157 F.3d at 726; Lester, 81 F.3d at 832). The Commissioner responds that the report lacked supporting findings or explanation, that it relied on Plaintiff's own report of his lifting limitation, and that it was inconsistent with four other medical sources. See ECF No. 8, pp. 8-10. In reply, Plaintiff stands on his opening brief. See ECF No. 9, p. 5.

The Court finds no error. As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Dr. Guce's report presented neither. It is a form listing restrictions without any accompanying findings or explanation, and it was issued in response to a secure message without an examination. See CAR 635, 638. Plaintiff concedes that Dr. Guce's own examinations "contained little or no exam findings." ECF No. 6, p. 15. As noted above, the particular findings

the ALJ cited from those examinations are not especially probative of spinal function. But the ALJ's essential point, that nothing in Dr. Guce's examinations supports the restrictions he assessed, is accurate, and Plaintiff does not identify any examination by Dr. Guce documenting findings that would. Plaintiff's argument that Dr. Guce oversaw his care and was presumably aware of the physical therapy findings and imaging does not change the analysis. The report does not reference any of that evidence, and the ALJ was not required to infer what Dr. Guce might have relied on. The ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Thomas, 278 F.3d at 957).

Nor did the ALJ err in considering the circumstances under which the report was prepared. Plaintiff is correct that "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." Lester, 81 F.3d at 832; see Reddick, 157 F.3d at 726. That rule applies, however, "in the absence of other evidence to undermine the credibility of a medical report." Reddick, 157 F.3d at 726; see Saelee, 94 F.3d at 522-23 (ALJ properly discounted report that was obtained solely for the administrative hearing and varied from the physician's own treatment notes). The ALJ did not discount Dr. Guce's report merely because Plaintiff requested it or because it might be used to support his disability claim. The record shows that the central limitation in the report, a 15-pound lifting restriction, originated with Plaintiff, and that Dr. Guce adopted it without examining him. See CAR 635, 638. An ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041; see Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (distinguishing an opinion that "is not more heavily based on a patient's self-reports than on clinical observations"). Because the ALJ properly discounted Plaintiff's subjective statements, the ALJ could reasonably conclude that the report reflected Plaintiff's own account of his limitations rather than Dr. Guce's independent clinical judgment.

The ALJ's consistency finding is also supported by substantial evidence. Four medical sources, two state agency consultants and two consultative examiners who personally examined Plaintiff, assessed Plaintiff as capable of a range of medium work. See CAR 36-37, 483, 572. An examining physician's opinion resting on independent clinical findings may itself constitute substantial evidence, see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001), as may the opinions of non-examining physicians that are consistent with other evidence in the record, see Thomas, 278 F.3d at 957. Plaintiff argues that Dr. Guce was the only physician who treated him, see ECF No. 6, p. 16, but under the revised regulations a treating relationship no longer entitles an opinion to special weight. See Woods, 32 F.4th at 792; 20 C.F.R. § 404.1520c(a). Plaintiff also argues that Dr. Guce's report is consistent with the assessments of his physical therapists, see ECF No. 6, p. 16, but, as discussed below, those assessments do not express functional limitations comparable to Dr. Guce's restrictions.

Finally, even if the ALJ had erred, the error would be harmless. By its terms, Dr. Guce's report imposed restrictions for three months, after which Plaintiff was "deemed able to return to work at full capacity." CAR 638; see CAR 37 (noting the period covered by the report). To qualify for benefits, a claimant's impairment must prevent substantial gainful activity for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. An ALJ may accordingly give little weight to restrictions that a physician imposed only temporarily. See Carmickle, 533 F.3d at 1165 (upholding ALJ's decision to give "little weight" to treating physician's statement, made when he gave the claimant a two-week work excuse, where the physician released the claimant to full-time work two months later). Because the report on its face describes restrictions lasting only three months, crediting it would not have required a finding that Plaintiff was disabled. See Molina, 674 F.3d at 1115.

2. Plaintiff's Physical Therapist

Plaintiff points to two physical therapy records. The first is an October 2022 initial evaluation by physical therapist Scott Mallory. Under the heading "SUBJECTIVE EXAMINATION," the note records Plaintiff's report of low back pain and lists "Funcional [sic] Limitations: Walking one hour[,] sitting one hour[,] Bending." CAR 339. The plan of care set

goals that Plaintiff would "be able to tolerate sitting for 60 minutes with no pain" and "walk 60 minutes with no pain" within 12 weeks. CAR 338. In the "ASSESSMENT" section, the therapist wrote that Plaintiff's impairments in lumbar range of motion, hip flexor muscle length, and hip range of motion "are contributing to activity limitations and participation restrictions resulting in a functional limitation in sitting, walking and bending," and anticipated that Plaintiff would "improve with a skilled physical therapy program." CAR 340. The second is an October 2024, evaluation by physical therapist Taylor Desilva, who documented markedly limited cervical range of motion and wrote that Plaintiff's impairments "contribute to activity limitations of all neck movements, upright posture and lifting" and to "participation restrictions in the patient's inability to carry out daily tasks, driving or taking care of grandkids without dysfunction." CAR 799-800.

Plaintiff argues that these statements are medical opinions that the ALJ was required to evaluate under 20 C.F.R. § 404.1520c, and that the failure to do so was harmful because the sitting and walking limitations they describe are more restrictive than the residual functional capacity. See ECF No. 6, pp. 17-18 (citing Woods, 32 F.4th at 792; Kilpatrick v. Kijakazi, 35 F.4th 1187, 1193 (9th Cir. 2022)). The Commissioner responds that the statements are not medical opinions and that, in any event, they do not describe limitations more restrictive than the residual functional capacity. See ECF No. 8, pp. 11-12.

The Court agrees with the Commissioner. A medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical demands of work activities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions." 20 C.F.R. § 404.1513(a)(2), (a)(2)(i). By contrast, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." Id. § 404.1513(a)(3). The ALJ must articulate how persuasive he finds the medical opinions in the

record, see id. § 404.1520c(b), but the regulations impose no comparable articulation requirement for other medical evidence.

Neither record contains a medical opinion. The October 2022 "limitations" of walking one hour and sitting one hour appear in the subjective portion of the note and record what Plaintiff reported, not the therapist's assessment of what he could still do. See CAR 339. The corresponding treatment goals of sitting and walking for 60 minutes "with no pain" describe what therapy was intended to achieve, not the most Plaintiff could do. See CAR 338. And the assessments in both records identify Plaintiff's impairments and the activities they affect, such as sitting, walking, bending, neck movement, posture, and lifting, without stating what Plaintiff could still do despite those impairments or quantifying any limitation. See CAR 340, 799-800. Such statements are "judgments about the nature and severity of [a claimant's] impairments," which the regulations classify as other medical evidence. 20 C.F.R. § 404.1513(a)(3); cf. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ was not required to provide reasons for rejecting a physician's report that did not assign any specific limitations, because the ALJ did not reject any of the report's conclusions).

Nor did the ALJ ignore Plaintiff's physical therapy. The ALJ discussed Plaintiff's multiple rounds of physical therapy, including the October 2022 evaluation and the October 2024 referral, see CAR 34-35, and acknowledged the reduced range of motion documented throughout the record, see CAR 33-35. Although an ALJ must explain why "significant probative evidence has been rejected," Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981)), the therapists' generalized assessments are not inconsistent with the residual functional capacity the ALJ assessed, which accounts for limitations in lifting, bending, and other postural activities. See CAR 31. The ALJ therefore did not err.

**C. Evidence Submitted to the Appeals Council**

After the ALJ's decision, Plaintiff submitted to the Appeals Council a Physical Residual Functional Capacity Statement completed by Dr. Guce on February 11, 2025. See CAR 14-17. On that form, Dr. Guce checked boxes indicating that Plaintiff can lift and carry less than ten

pounds both occasionally and frequently; can stand and walk for less than two hours and sit for less than six hours in an eight-hour workday; must elevate his legs 30 degrees for 25 percent of the time during prolonged sitting; needs to lie down for one to two hours per shift; would be absent two or more days per month "due to flare up of medical condition"; can never climb, squat, stoop, kneel, crawl, or crouch; and can only "rarely" push, pull, reach in any direction, handle, or finger. See CAR 14-16. Asked to explain how the evidence supports these conclusions, Dr. Guce wrote only: "Physical exam & evaluation at clinic, PT evaluation & treatment, specialist evaluations." CAR 15; see also CAR 16. Dr. Guce indicated that the limitations had been present for, or were expected to last, 12 months. See CAR 17. The Appeals Council found that the evidence "does not show a reasonable probability that it would change the outcome of the decision." CAR 2.

When a claimant submits additional evidence to the Appeals Council and it is made part of the administrative record, the district court must review the record as a whole to determine if substantial evidence still supports the underlying nondisability finding. Gardner v. Berryhill, 856 F.3d 652, 656 (9th Cir. 2017).

Plaintiff argues that the February 2025 statement is material because Dr. Guce treated Plaintiff throughout the period at issue and based the statement on his years of treatment, and because medical evaluations made after the relevant period may be probative of a claimant's earlier condition. See ECF No. 6, pp. 18-19 (citing Lester, 81 F.3d at 832; Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); Gardner, 856 F.3d at 657-58). The Commissioner responds that the new statement suffers from the same lack of support and inconsistency as Dr. Guce's earlier assessments, and that it is unexplained in light of Dr. Guce's earlier statement that Plaintiff could return to work at full capacity in August 2024. See ECF No. 8, pp. 12-14.

Considering the record as a whole, including Dr. Guce's February 2025 statement, the Court concludes that the ALJ's decision remains supported by substantial evidence. The Court accepts that a medical opinion issued after the ALJ's decision may shed light on a claimant's condition during the period under review. See Smith, 849 F.2d at 1225. But this is not a case like Gardner, in which the new evidence eliminated the only reason the ALJ gave for discounting the

treating physician's views. Here, the reasons the ALJ gave for finding Dr. Guce's earlier assessments unpersuasive apply equally to the new statement.

First, the statement suffers from the same lack of support. Dr. Guce's explanation, a generic reference to "[p]hysical exam & evaluation at clinic, PT evaluation & treatment, [and] specialist evaluations," CAR 15, does not identify any finding that supports the limitations he assessed. As discussed above, Dr. Guce's own examinations did not document such findings, and Plaintiff concedes as much. See ECF No. 6, p. 15. The specialist and consultative examinations, for their part, documented full strength in all extremities, intact sensation, and negative straight-leg raising, and both consultative examiners assessed Plaintiff as capable of medium work. See CAR 483, 486, 513, 525-26, 572. Several of the new limitations also lack any apparent basis in the record. Dr. Guce's finding that Plaintiff can only rarely handle and finger, for example, cannot be reconciled with findings of full upper extremity and grip strength and intact sensation, see CAR 513, 572, or with Plaintiff's own hearing testimony, which did not describe any limitation in the use of his hands, see CAR 51-57. Nor does anything in the record cited by either party explain the need to elevate Plaintiff's legs, and Dr. Guce's own examinations repeatedly noted no edema. See CAR 506, 667.

Second, the statement is inconsistent with the same evidence the ALJ relied on in finding Dr. Guce's earlier assessments unpersuasive, including the opinions of Drs. Samplay, Hay, Ali, and Van Kirk. See CAR 37. It is also inconsistent with Dr. Guce's own records. In July 2024, Dr. Guce recorded that Plaintiff's pain was "currently managed with pain medication" and that Plaintiff reported an effective medication regimen. CAR 666-67. In May 2024, Dr. Guce assessed restrictions far less severe than those in the February 2025 statement and stated that Plaintiff would be "able to return to work at full capacity" on August 19, 2024. CAR 638. The February 2025 statement does not acknowledge those assessments or identify any change in Plaintiff's condition that would account for the difference. And the radiologist who interpreted Plaintiff's October 2024 cervical and lumbar MRIs described the degenerative changes as not significantly changed from prior studies. See CAR 599, 814.

Because the reasons the ALJ gave for discounting Dr. Guce's assessments remain viable as applied to the February 2025 statement, and because the opinions of four other medical sources continue to provide substantial evidence for the residual functional capacity the ALJ assessed, the new evidence does not undermine the ALJ's decision. See Gardner, 856 F.3d at 657-58. Remand is not warranted on this basis.

## IV. CONCLUSION

Based on the foregoing, the undersigned hereby ORDERS that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 6, is DENIED.

2. Defendant's Cross-Motion for Summary Judgment, ECF No. 8, is GRANTED.

3. The final decision of the Commissioner of Social Security is AFFIRMED; and

4. The Clerk of the Court is directed to enter judgment in favor of the Defendant and close this file.

Dated: October 26, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE